IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

NINO and MISTY ORTEGA, as parents
and guardians of minor child, A.O.,

    Plaintiffs,

v.                                                                                                           Civ. No. 04-0262 BB/RHS

ARTHUR R. BROKOP and
FARMINGTON PUBLIC SCHOOLS,

    Defendants.

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**[1]

1.    Before the court is Plaintiffs' Motion for Attorneys' Fees, Taxes, Costs and Interest.[2] [Doc. 29] This case was one of three cases involving minor plaintiffs brought against the same defendants, alleging an incident of molestation against each of the three girls. The Ortega case settled before trial. Defendants stipulated that Plaintiffs herein were entitled to attorneys' fees and costs. *See* Judgment [Doc. 25].

2.    This case originated with attorney Victor Titus, who filed the action in state court. When Defendants removed to federal court, Lisa Vigil of the Vigil Law Firm became

---

[1] Within ten (10) days after a party is served with a copy of the Magistrate Judge's Report and Recommendation (R&R), that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections in the United States District Court to the R&R. A party must file any objections within the ten-day period allowed if that party wants to have appellate review of the R&R. If no objections are filed, no appellate review will be allowed.

[2] The Local Rules require that the application for attorney fees be submitted in a motion separately from the motion for costs. *See* D.N.M. LR-Civ. 54.1 - 54.5. Plaintiffs' counsel submitted their cost bills and attorneys' fees applications in one document. The court will consider the cost bills timely filed, but request counsel to submit separate cost bills to the Clerk of the Court within ten (10) days of entry of this Report and Recommendation, which only addresses the attorney fee portion of the Motion.

lead counsel. The case settled for $300,000.

3. Defendants contest the amount of fees. Conceding that Plaintiffs were prevailing parties for the purposes of 42 U.S.C. § 1988, they nonetheless argue that the hourly amounts are excessive, the billing in many instances was duplicative, and that many of the fees are excessive.

4. The starting point for determining the amount of an appropriate attorney fee is to calculate the number of hours reasonably expended and to multiply that number by a reasonable hourly rate. *Ramos v. Lamm*, 713 F.2d 546, 552 (10th Cir. 1983), *abrogated on other grounds by Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711 (1987). The resulting figure is the "lodestar." *Case v. Unified School Dist.*, 157 F.3d 1243, 1249 (10th Cir. 1998). The court has an obligation to exclude hours not "reasonably expended" from the lodestar calculation. *Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)); *see* 42 U.S.C. § 1988(b) (prevailing party is to receive a "reasonable attorney's fee").

5. There are two elements to the reasonableness inquiry: first, has the attorney exercised billing judgment and deleted excessive, unnecessary or redundant fees from the application, *see Hensley*, 461 U.S. at 437; and second, is the fee award reasonable in light of the success obtained, *see id.* at 436. The court "must reduce the actual number of hours expended to a reasonable number to ensure services an attorney would not properly bill to the client are not billed to the adverse party." *United Phosphorous, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1239 (10th Cir. 2000). The burden is on the party requesting fees to demonstrate that the time expended was indeed reasonable. *Case*, 157

F.3d at 1249.

6.    **Titus & Murphy**.  This law firm is located in Farmington, New Mexico and filed the state court action on February 4, 2004.  Prior to removal to federal court, the case was handled by Victor Titus, who was admitted to the bar in 1981.  He requests a fee of $300.00 per hour.  The court finds that $300.00 is too high an amount of hourly compensation for attorneys in this district with 24 years' experience.  A more reasonable hourly fee is $275.00, especially given the limited nature of Mr. Titus' involvement with the case and the lack of novelty or difficulty of the legal issues involved.

7.    In his Affidavit, Mr. Titus states he is requesting a total fee of $7,285.33 for himself and the paralegals.  *See* Addendum to Exhibits 2 through 5 and Second Addendum to Exhibits 2 through 5 [Doc. 30 & 31].  The court has calculated all the entries and comes up with $4,200 for Mr. Titus (at $300.00 per hour) and $1,350.00 for the paralegals (at $50.00 per hour), for a total fee claim of $5,550.00.  As noted previously, *see* note 2, this opinion only concerns fees so the court's total does not reflect any costs. Further, interest on fees are only recoverable in limited circumstances under 42 U.S.C. § 1988.  *See Shakman v. Democratic Organization of Cook County*, 644 F. Supp. 422 (N.D. Ill. 1994). Interest compounded monthly on the "unpaid balance," rather like a revolving credit account, is not recoverable.

8.    Mr. Titus apparently employs five individuals who enter their time only by initials:  DB, JS, TP, JoS and SF.  Each of these individuals bills time at $50.00 per hour as a paralegal.  Although $50.00 for paralegal time is reasonable, the court has concerns about the billing entries submitted.

9.     Paralegals must be qualified by experience, education or training. *Jones v. Armstrong Cork Co.*, 630 F.2d 324, 325 n.1 (5th Cir. 1980). "[I]n order to recover for paralegal fees, the services rendered must be legal in nature, or work traditionally performed by an attorney." *Id*. Clerical or secretarial work is not compensable. *Lalla v. City of New Orleans*, 161 F. Supp.2d 686, 711 (E.D. La.).

10.    None of the five individuals designated as paralegals filed affidavits concerning their training, education, or experience. A review of their record entries indicates that much of the time expended was either poorly documented or consisted of clerical or secretarial work. For example, JoS' entries from February 5, 2004 until August 23, 2004 consist of the following entries for time: "Letter," "Miscellaneous Paralegal Work," "Phone Call," "Call to opposing," and the like. This is improper time-keeping. Similarly, time is charged for preparing certificates of service, letters to process servers, calls to opposing counsel, and "working on" discovery. Organizing, typing, placing phone calls for Mr. Titus, or other clerical functions are not compensable.

11.    The court is also concerned about other entries from both Mr. Titus and any of the 5 paralegals. Between June 12, 2003 and February 4, 2004, 6.75 hours were expended by Mr. Titus and three paralegals for drafting or working on the complaint. Between June 12, 2003 and February 4, 2004, Mr. Titus expended 1.75 hours on discovery; paralegal JS expended 4 hours on discovery. In December, 2003, Mr. Titus expended .75 hours working on a "draft response to motion;" JS expended .50 hours "revise response to MTD," which the court assumes means motion to dismiss.

12.    It seems inconceivable to the court that four individuals were needed to draft

a complaint over a 7-month period. Similarly, there is no indication that any of the discovery drafted by Mr. Titus and JS was ever utilized in either state or federal court. Finally, the court is unaware of a motion to dismiss that needed a response drafted prior to the filing of the complaint.

13. In short, the court finds a lack of the exercise of billing judgment to delete improper, redundant, or duplicate time prior to submitting the application to the court. As for the paralegals, the court finds that the following time is compensable:

a. TP entries for 10/2/03, 10/8/03 and 10/9/03 for interviewing witnesses and other investigatory tasks: 5 hours @ $50.00 per hour for a total of $250.00; and

b. JS entries for 7/17/03, 9/30/03, 10/02/03, 11/7/03, 11/11, 12/2, 12/3, 12/17 (.25 only) and 3/17:  8 hours @ $50.00 per hour for a total of $400.00.

14. The remaining entries from other individuals lack sufficient detail or do not comprise paralegal work. Thus, Titus & Murphy may be compensated for $650.00 for paralegal time, plus New Mexico Gross Receipts Tax.

15. As for Mr. Titus, the entries on 10/2, 10/5, 10/6, 10/13, 11/21, 12/10, 12/14 all concern drafting the aforementioned discovery and motion and will not be compensable. Those entries comprise 2.5 hours.

16. The following entries are also not compensable either because they lack sufficient detail or are considered part of overhead:  10/9 (conference with Pearson, .25); 2/11 (draft document, .25); 5/26  (phone call from Casey, .25); 8/18 ("Travel by attorney" and other matters block-billed on this date for 1.75 hours). The total amount of hours noted is 2.25.

17.     The court also notes an inordinate amount of time, especially when billed out in 15-minute increments, in phone calls with opposing counsel, with attorney Lisa Vigil, or with plaintiffs' counsel in the companion cases.  No detail is given in these entries: 12/18/03 (.25), 1/28/04 (2 entries at .25 each), 2/05/04 (.25), 3/11/04 (.25), 4/13/04 (.25), 4/27/04 (.25), 5/11/04 (.25), 5/13/04 (.25), 6/08/04 (.25), 6/09/04 (2 entries at .25 each), 2/09/05 (2 entries at .25 each), and  4/22/05 (.25).  These phone calls comprise 3.75 hours.  The court finds that Mr. Titus failed to exercise billing judgment when he submitted his application for these entries, and the amount of time compensable for these entries shall be 1.9 hours.

18.     Out of Mr. Titus' total of 14 hours submitted, the court has deducted 6.60 hours (¶ 15, 2.5 hours; ¶ 16, 2.25 and ¶ 17, 1.85), for a total of compensable time of 7.4 hours at $275.00 per hour.  Mr. Titus is entitled to $2,035.00 in fees, plus New Mexico Gross Receipts Tax.

19.     **Vigil Law Firm**.  Lisa Vigil filed her Entry of Appearance on April 23, 2004 in this case.  She has practiced law for 12 years and requests a fee of $275.00 per hour.  Her associate, Amalia S. Lucero, has six years' experience and requests a fee of $150.00 per hour.  The court finds that for an attorney of Ms. Vigil's experience, a fee of $250.00 per hour is customary and usual in this district.  Ms. Lucero's fee of $150.00 per hour is customary in this locale.

20.     As noted previously, this case was neither novel nor complex.  Indeed, with two other companion cases it seems that counsel would have had to spend less time by coordinating discovery, etc.  Be that as it may, the Vigil law firm decided that two attorneys

6

should work on this case. If two attorneys are genuinely needed to handle a case, then that does not mean that both of them do the same thing and charge for it. The court finds that billing judgment was not exercised in this matter. *Hensley*, 461 U.S. at 437.

21. It appears that every piece of correspondence, including e-mails, was read at least once by both attorneys and charged for accordingly. This is considered duplicative and both attorneys cannot charge time for their perusal of a document that may or may not even be relevant to their case. For example, both attorneys read the preliminary docket on May 11, both reviewed the order setting the initial scheduling conference (Vigil on June 18; Lucero on May 25), both spent over an hour reviewing a reply brief in another case (May 26) and, most curiously, on two deposition occasions the person attending (but not taking) prepared for the deposition, while the person taking it did not prepare: On November 23, Lisa Vigil prepared for and attended the deposition of Vicky Funk Shelly, which was taken by Amalia Lucero on the same date. On January 27, 2005 Lisa Vigil prepared for and attended Janel Ryan's deposition, which apparently was taken by Amalia Lucero on February 3, 2005.

22. Between March 30, 2004 and April 29, 2005, Ms. Vigil expended 14.65 hours and Ms. Lucero expended 16.7 hours doing the same thing: reviewing the same correspondence, pleadings, e-mails, and reports.

23. On August 30, 2004, Ms. Vigil expended 8 hours to review the file in preparation for the Brokop deposition; Ms. Lucero also spent 8 hours on September 2, 2004 reviewing the same file. And then Ms. Lucero reviewed the same file again on

October 22, 2005 for another 8 hour time entry.

24.     Both attorneys worked on drafting the Pretrial Order ("PTO").  Ms. Vigil charged 3.2 hours for reviewing the entire case and drafting the PTO on March 10.  Ms. Lucero expended 8 hours reviewing the entire case, 8 hours drafting the PTO on March 10, and another 3 hours the next day "drafting, e-mailing, and faxing."  This is a total of 22.2 hours expended by two attorneys for a document that is largely a pre-prepared form.

25.     In addition to the depositions referred to in ¶ 21, they both appeared at the depositions of Joan Alam (or Ahem) and Gwen Brack; they both spent 4.0 hours preparing for the settlement conference, and billed 5.5 (Vigil) and 6.5 (Lucero) hours meeting with clients and attending the settlement conference on March 29, 2005.  They both attended a 2.75 (Vigil) or 3.15 (Lucero) luncheon with counsel on one of the companion cases.  They conferred over "theme development" on October 28, Vigil spending 2.3 hours and Lucero 1.0 hours.

26.     In December, 2004, Ms. Vigil expended 2.4 hours preparing a settlement proposal to the Defendants.  In January, 2005, she spent 2.5 hours reviewing the deposition of Art Brokop.  In February, 2005, she spent 6.6 hours reviewing the Brokop deposition in preparation for a settlement conference and another 1.2 hours finalizing the position paper.  On March 10 she expended the 3.2 hours referred to in ¶ 24 for the PTO and reviewing discovery, etc.   Then on March 23, she spent 8 hours on a "complete review of trial notebook . . . ."   The court cannot understand why, after this extensive review, Ms. Vigil needed another 4 hours on March 28 to prepare for the settlement conference.

27. Ms. Lucero's entries also contain matters which should not be billed to clients and thus not to her adversary. On February 16, Ms. Lucero spent 2 hours with Ms. Vigil discussing status of the case and getting "debrief[ed] on the February 14 settlement conference. There is no entry on Ms. Vigil's time sheet for a February 14 settlement conference. Ms. Lucero then spent another 6 hours reviewing all of the correspondence and discovery that had been sent or received during the time she was on maternity leave.

28. Based on the court's review of Ms. Vigil's and Ms. Lucero's fee application, a reduction in hours for both is warranted. This case involved one incident on one day and the case did not require the extensive work-up and review by two lawyers. Both lawyers charged for ministerial duties, duplicated reviews of items, both attended and charged for depositions, and many other entries of time that are not compensable. Accordingly, to achieve a reasonable fee, Ms. Vigil's hours will be reduced by 20% and Ms. Lucero's hours by 30%.

29. The Vigil Law Firm also utilized the services of a paralegal, Pauline Guillen-Montaño, who bills at $60.00 per hour, the reasonable and customary rate in this district. Ms. Guillen-Montaño expended a total of 20.5 hours between March 30, 2004 and April 27, 2005.

30. The court finds that the following paralegal time should be deducted: the one hour conference with Ms. Vigil and Ms. Lucero on March 30; the .15 review of the preliminary docket on May 11; the 3 hours spent on reviewing the Brokop file on October

9

26; and the one hour conference with Ms. Vigil and Ms. Lucero on February 16, 2005. The excluded time totals 5.15 hours, for a balance of 15.35 hours reasonably expended on this case.

31.   The new totals for the Vigil Law Firm are:

(a)  Lisa Vigil, 224.66 hours @ $250.00 per hour totals $56, 165.00, plus the applicable New Mexico Gross Receipts Tax.

(b) Amalia S. Lucero, 121.65 hours @ $150.00 per hours totals $18, 247.50, plus the applicable New Mexico Gross Receipts Tax.

(c) Pauline Guillen-Montaño, 15.35 hours @ $60.00 per hour totals $921.00, plus the applicable New Mexico Gross Receipts Tax.

## Recommended Disposition

I recommend that the law firm of Titus & Murphy should receive a total of $2,685.00 in attorney and paralegal fees, plus New Mexico Gross Receipts Tax and that the Vigil Law Firm be awarded a total of $75,333.50 in attorney and paralegal fees, plus New Mexico Gross Receipts Tax.  Cost Bills should be prepared separately and submitted to the Clerk of the Court.

Richard L. Puglisi
United States Magistrate Judge